```
                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON
```

ZONNA A. CARROLL,                )
                                 )   No. CV-09-256-JPH
        Plaintiff,              )
                                 )
v.                               )
                                 )   ORDER GRANTING DEFENDANT'S
                                 )   MOTION FOR SUMMARY
MICHAEL J. ASTRUE,               )   JUDGMENT AND DENYING
   Commissioner of Social Security,)   PLAINTIFF'S MOTION FOR
                                 )   SUMMARY JUDGMENT
        Defendant.              )
                                 )
                                 )
                                 )

      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 12, 18.) Attorney Lora Lee Stover represents plaintiff; Special Assistant United States Attorney Lisa Goldoftas represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

## JURISDICTION

      Plaintiff Zonna A. Carroll (plaintiff) protectively filed for supplemental security income (SSI) on June 26, 2003.[1] (Tr. 570, 573.) Plaintiff alleged an onset date of July 14, 1996. (Tr. 570.) Benefits were denied initially and on reconsideration. (Tr. 515, 521.) Plaintiff requested a hearing before an

---

[1] Plaintiff filed a previous claim for disability benefits on June 14, 1996, which was denied by an ALJ on November 24, 1998. (Tr. 65, 104.) She filed a second application on October 25, 2000, which was denied at the initial level on June 28, 2001. (Tr. 33.) The ALJ in this matter declined to reopen the prior determination. (Tr. 33.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

administrative law judge (ALJ), which was held before ALJ Mary Bennett. Reed on May 11, 2006. (Tr. 1464-95.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 1466-94.) A second hearing was held on July 20, 2006. (Tr. 1498-1520.) Medical expert Dr. George Weilepp testified. (Tr. 1499-1520.) A third hearing was held on November 7, 2006. (Tr. 1524-1557.) Plaintiff, vocational expert Daniel McKinney, and medical expert Dr. Thomas McKnight all testified. (Tr. 1526-55.) The ALJ denied benefits (Tr. 33-57) and the Appeals Council denied review. (Tr. 15.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 40 years old at the time of the hearing. (Tr. 1466.) Plaintiff testified she went to school through the ninth grade. (Tr. 1467.) She was in special education and testified she can hardly read. (Tr. 1467.) She worked briefly in a convenience store and at a bingo hall. (Tr. 1468-69.) Plaintiff testified the problems that keep her from working include anxiety attacks, a really bad back, she cannot read or write, and memory problems. (Tr. 1469.) She said she has bad headaches as the result of a stroke, and her right side goes numb and her eye twitches. (Tr. 1470.) The discs in her lower back are deteriorating, causing difficulty walking, sitting, and getting out of bed. (Tr. 1473, 1478.) Plaintiff has pain from her neck to her back all the way to her feet. (Tr. 1479.) According to Plaintiff, her feet and legs feel like they are on fire. (Tr. 1545.) She uses a cane. (Tr. 1473.) Plaintiff also has hepatitis C which causes weakness and swelling in her stomach. (Tr. 1474.) Plaintiff has had four surgeries on her hands and says it is hard for her to write or hold things. (Tr. 1476.) Plaintiff admitted she used marijuana and street pills in the past, and that she had unintentionally used heroin and methamphetamine. (Tr. 1482-87.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The

[Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then

shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since June 26, 2003, the application date. (Tr. 35.) At step two, the ALJ found plaintiff has the following severe impairments: degenerative disc disease, hepatitis C, chronic obstructive pulmonary disease, status post ganglion cyst remove from both wrists, and drug and alcohol addiction. (Tr. 36.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 49.) The ALJ then determined:

> [B]ased on all of the impairments, including the substance use disorder(s), the claimant has the residual functional capacity to perform light exertion. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 1 ½ hours at a time for 6 hours in an 8-hour day. She can sit for 1 ½ hours at a time for 6 hours in an 8-hour day. She can occasionally climb stairs and ramps. She is unable to climb ropes, ladders, or scaffolds. She can occasionally engage in kneeling, crouching, or crawling. She should avoid unprotected heights and industrial vibration. She should avoid concentrated exposure to cold temperatures. She should avoid hazards such as moving machinery. In addition, she is moderately limited in the ability to understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance and be punctual; complete a normal workday or workweek; and perform at a consistent pace. She is moderately to

markedly limited in the ability to interact appropriately with the public.

(Tr. 50.) At step four, the ALJ found plaintiff has no past relevant work. (Tr. 54.) After taking into account plaintiff's age, education, work experience, residual functional capacity, and including the substance use disorder(s), the ALJ determined no jobs exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 55.) Thus, a finding of "disabled" would be appropriate. (Tr. 55.)

However, because there is medical evidence of drug or alcohol addiction, the ALJ continued the analysis. The ALJ found if plaintiff stopped the substance use, plaintiff would continue to have a severe impairment or combination of impairments. (Tr. 55.) The ALJ specifically found that absent substance abuse/dependence, plaintiff has no medically determinable mental impairments. (Tr. 55.) Next, the ALJ determined plaintiff's impairment or combination of impairments does not meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 56.) The ALJ then found:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light exertion. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 1 ½ hours at a time for 6 hours in an 8-hour day. She can sit for 1 ½ hours at a time for 6 hours in an 8-hour day. She can occasionally climb stairs and ramps. She is unable to climb ropes, ladders, or scaffolds. She can occasionally engage in kneeling, crouching, or crawling. She should avoid unprotected heights and industrial vibration. She should avoid concentrated exposure to cold temperatures. She should avoid hazards such as moving machinery.

(Tr. 56.) The ALJ concluded that if plaintiff stopped the substance abuse, and taking into account plaintiff's age, education, work experience, and residual functional capacity, and the testimony of a vocational expert, there would be a significant number of jobs in the national economy that plaintiff could perform. (Tr. 56.) Because plaintiff would not be disabled if she stopped the substance use, the ALJ found plaintiff's substance use disorder is a contributing factor material to the determination of disability. (Tr. 57.) Thus, the ALJ concluded plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision.

**ISSUES**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) improperly evaluated the medical and psychological opinions; (2) improperly determined plaintiff's mental impairments and limitations were caused by plaintiff's substance use; and (3) posed an incomplete hypothetical to the vocational expert and made an erroneous step five finding. (Ct. Rec. 13 at 14-17.) Defendant argues the ALJ: (1) properly considered the medical and psychological opinion evidence; and (2) properly considered plaintiff's substance abuse; and (3) properly completed the sequential evaluation process, including the RFC, hypothetical to the vocational expert, and step five analysis. (Ct. Rec. 19 at 9-18.)

**DISCUSSION**

**1.    Drug and Alcohol Analysis**

Plaintiff contends there is no evidence of current substance addiction and the ALJ improperly determined plaintiff's mental impairments and limitations were caused by substance use. (Ct. Rec. 13 at 15-16.) Plaintiff admits there is evidence that plaintiff has used substances at times, "but there is no clear and convincing evidence of addiction, nor of materiality as it pertains to the issue of employability." (Ct. Rec. 13 at 16.)   As noted above, if the ALJ finds a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must make a determination as to whether drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(a), 419.935(a).  Plaintiff cites no authority for the proposition that "clear and convincing evidence of addiction" is required.  The proper evidentiary standard is "substantial evidence." *See Parra v. Astrue* 481 F.3d 742, 750 (9th Cir. 2007.)

The ALJ cited many instances of substance use mentioned or suspected in the record. (Tr. 36-49.) In 1996, Dr. Arnold noted possible diagnosis of cannabis abuse. (Tr. 386.) Dr. Bagby noted past drug use of street drugs and Dr. Fitterer noted a history of IV drug use. (Tr. 311, 638.) In 1997, emergency room notes records noted numerous ER visits for drug seeking behavior. (Tr. 411.) Plaintiff underwent inpatient treatment for heroin, alcohol and methamphetamine dependence. (Tr. 461-64.) ER records in 1998 note abuse of prescription medication and drug seeking behavior. (Tr. 1086.) In May 1998, Dr. Lantsberger reported plaintiff was enrolled in a recovery program and had been clean from heroin for nine days. (Tr. 447.) In 2002, plaintiff reported addiction to Percocet,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

Soma and Lortab. She told Dr. Bailey she had been clean since 1997, but had recently been prescribed 12 narcotics at an ER. (Tr. 655.)  Dr. Bailey thought plaintiff's substance abuse needed to be watched and secondary gain was an issue.  (Tr. 658.)

In December 2002, plaintiff overdosed and tested positive for cocaine, opiates, and tricyclics. (Tr. 667.)  Emergency room physicians noted drug behavior of "skin popping" and questioned plaintiff's denial of current drug use in December 2003.  (Tr. 1217, 1219, 1222.)  A physician's assistant noted plaintiff was using marijuana and methamphetamines in May 2004.  (Tr. 958.)  In follow up, plaintiff admitted using marijuana twice in the last month and a sobriety date of May 21, 2004 was established.  (Tr. 961.)   In January 2005, plaintiff told Dr. Tran she smoked marijuana until two months prior and reported a history of using narcotic pain medication obtained from friends. (Tr. 786.)   In April 2006, plaintiff admitted buying pain pills off the street.  (Tr.1196.)  The medical expert at the July 2006 hearing, Dr. Weilepp, testified that plaintiff has a prescription and non-prescription drug problem and that plaintiff's substance abuse continues throughout the record.  (Tr. 1502, 1507.)  Dr. McKnight, the medical expert at the November 2006 hearing, noted drug seeking behavior and numerous inconsistencies in plaintiff's reporting.  (Tr. 1525-43.)

The record is replete with reports of drug abuse or suspected drug abuse by various and multiple medical providers.  The ALJ reasonably determined this constitutes medical evidence of substance addiction within the meaning of 20 C.F.R. §§ 404.1535(a) and 419.9359(a), triggering the need for analysis of plaintiff limitations without the effects of substance use.  Once medical evidence of substance abuse surfaces, the burden shifts to the plaintiff to establish that drug or alcohol addiction is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.  Plaintiff argues that she met this burden without addressing the substantial medical evidence of substance abuse in the record.

Plaintiff first argues the ALJ failed to recognize that her narcotic medications were prescribed by doctors. (Ct. Rec. 13 at 16.)  However, the ALJ did acknowledge some of plaintiff's drug use was prescribed.  The ALJ pointed out the record reflects ongoing substance use, including marijuana, narcotic pain medicines both prescribed and obtained from the street, "skin popping drugs," and other similar notations throughout the record. (Tr. 51.)  Furthermore, plaintiff admitted obtaining

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

prescription drugs off the street and the record suggests on at least one occasion that plaintiff was misusing her prescription medication. (Tr. 786, 1017, 1196.) Therefore, although plaintiff does receive prescription narcotics, the evidence reasonably establishes that plaintiff has abused her prescriptions and used drugs not prescribed to her, as well.

Plaintiff argues the evidence establishes disabling limitations notwithstanding the effects of substance abuse. (Ct. Rec. 13 at 15-16.)    When a claimant's remaining limitations would be disabling if drug and alcohol use were stopped, the claimant is independently disabled and substance abuse is not a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(ii). In support, plaintiff points to school records, intelligence testing from 1996, and the opinion of the medical expert, Dr. McKnight. (Ct. Rec. 13 at 15-16.)

First, the school records were submitted to the Appeals Council and were not available to the ALJ. (Tr. 1453-61.) The school records are properly considered by this court because the Appeals Council considered them in denying Plaintiff's request for review.[2] *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)*; Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). The records are a report of plaintiff's grades with no evidence of any cognitive or other psychological testing. While it appears plaintiff overall did poorly in school, the school report cards do not establish any limitations or constitute evidence of disability independent of substance abuse. Furthermore, the remoteness in time of school records from 1977-81 renders the little information contained in the records less relevant.

Second, plaintiff points to intelligence testing by Drs. Arnold and Mabee as evidence of low intellectual capacity. (Ct. Rec. 13 at 15-16.) In 1996, plaintiff was examined by Dr. Arnold. He diagnosed borderline intellectual functioning, personality disorder, major depression and anxiety

---

[2] It is not entirely clear whether the Appeals Council considered the school records. The school records are listed on the AC Exhibits List as Exhibit AC-7. (Tr. 14.) In the Notice of Appeals Council Action dated July 21, 2009, the Appeals Council mentioned all of the exhibits on the Exhibits List except for the school records. The Order of Appeals Council making the exhibits in the AC Exhibits List part of the record is not found in the record. Viewing the issue in the light most favorable to plaintiff, the court considers the records as discussed herein.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

disorder, in part based on IQ test results of 74. (Tr. 385-86.)  In 1998, Dr. Mabee also obtained IQ test results of 74 and diagnosed borderline intellectual functioning, anxiety disorder, personality disorder, and rule out substance abuse.  (Tr. 453, 455.)  As defendant points out, the ALJ specifically declined to reopen plaintiff's prior claim and evidence from 1996 and 1998 was discussed only for the purpose of determining the nature and extent of any current impairments.  (Ct. Rec. 19 at 13, Tr. 33.)  Thus, evidence from 1996 and 1998 is not particularly persuasive.  Additionally, the testimony of the medical expert calls into question the reliability of the IQ test results.  Dr. McKnight stated the borderline intellectual functioning diagnosis is probably inaccurate. (Tr. 1529.)  Dr. McKnight noted it was hard to assess plaintiff's intellectual functioning due to lack of effort and her involved history of drug abuse.  (Tr. 1529.)  Furthermore, Dr. McKnight pointed out it is not clear from the record that plaintiff was drug-free at the times she was evaluated, limiting the reliability of the 1996 and 1998 IQ scores.  (Tr. 1529.)

Plaintiff asserts Dr. McKnight's testimony supports her argument that she is disabled notwithstanding substance abuse.  Plaintiff states, "Dr. McKnight indicated that Plaintiff is of lower intellectual capacities."  (Ct. Rec. 13 at 16, citing Tr. 1532.)  Dr. McKnight actually testified that plaintiff's intellectual functioning is probably in the low average range.  (Tr. 1532.)  He said, "I think we're looking at a person within the low average range that has some cognitive inconsistencies, possibl[y] some cognitive difficulty, but her performance on memory assessment when she's actually given a reasonable effort is actually higher than the IQ scores would demand."  (Tr. 1532.)  Furthermore, Dr. McKnight stated, "I think it's very difficult to conclude she has a significant mental health problem given the difficulty with her [credibility]."  (Tr. 1528.)  When asked if she has a medically determinable mental impairment, Dr. McKnight answered, "I can't determine that she does."  (Tr. 1530.)  Plaintiff's suggestion that Dr. McKnight opined plaintiff has low intellectual functioning causing disabling limitations is not supported by the record.[3]

---

[3] Plaintiff also asserts Dr. McKnight recognized that "it is more probabl[e] than not that Plaintiff would not be able to meet employment demands based on the combined effects of her impairments." (Ct. Rec. 13 at 17.)  Dr. McKnight actually opined that in looking at the file in total, for "whatever

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

Finally, plaintiff also argues that a fair viewing of the "totality of the evidence" shows that plaintiff met her burden of proof under *Parra*. (Ct. Rec. 13 at 15.) By contrast, the ALJ noted the psychological examinations throughout the record date back to 1996, with varying opinions as to diagnoses and work-related functioning. (Tr. 51.) It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ pointed out that several examiners opined that plaintiff was malingering memory functioning, cognitive functioning, and psychological symptoms.[4] (Tr. 51.) The combination of reasons" (including substance abuse), plaintiff was probably not able to sustain work. (Tr. 1531-32.) Dr. McKnight testified he could not determine whether plaintiff has limitations under part B regardless of the effects of substance abuse because he would want to see psychological evidence verifiably obtained without the impact of substance abuse. (Tr. 1533.) Although Dr. McKnight's testimony is inconclusive on this point, the inconclusive testimony does not satisfy plaintiff's burden of proof that her substance abuse is not material to disability. *See Parra*, 481 F.3d at 749.

---

[4] The ALJ determined plaintiff is less than fully credible. (Tr. 51-53.) If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). In this case, there is evidence of malingering, so the ALJ need not provide clear and convincing reasons supported by substantial evidence for rejecting plaintiff's testimony. However, the court concludes the ALJ's credibility determination includes clear and convincing reasons supported by substantial evidence. Plaintiff does not challenge the negative credibility finding.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

ALJ found Dr. McKnight's testimony persuasive and accepted his opinion that the record does not establish a medically determinable mental impairment. (Tr. 51.) This is supported by the opinion of Dr. Toews, an examining psychologist who reviewed the entire record and conducted independent psychological testing. (Tr. 51, 1353-76.) Plaintiff does not point to the opinion of any medical provider who had the opportunity to review "the totality of the evidence" and opined that plaintiff was disabled. To the contrary, two psychologists who reviewed all of the evidence concluded plaintiff was malingering and unreliable. Even if the evidence mentioned by plaintiff conflicts with the ALJ's findings, plaintiff has not demonstrated that the ALJ made an error as a matter of law. The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ reasonably concluded plaintiff has no medically determinable mental impairment absent the effects of drugs and alcohol and the findings are supported by substantial evidence.

**2. Opinion Evidence**

Plaintiff argues the ALJ improperly evaluated the medical and psychological opinion evidence. (Ct. Rec. 13 at 14.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

     Plaintiff asserts the ALJ "improperly evaluated the medical opinions of her providers and those psychologists who evaluated her, as well as the opinion of Dr. McKnight, " and the ALJ "improperly rejected the opinions of Plaintiff's providers as they pertain to her physical problems and the medical expert's opinions, as they pertain to Plaintiff's personality disorder as well as the opinions of the examining psychologists." (Ct. Rec. 13 at 14-15.) However, plaintiff does not argue the ALJ improperly rejected the opinion of any particular provider. Furthermore, plaintiff does not argue that the ALJ failed to offer specific, legitimate reasons for rejecting the opinion of any provider, nor does plaintiff point to any improper reasons offered by the ALJ in rejecting any medical or psychological opinion. Having reviewed the ALJ's discussion of the medical and psychological opinion evidence, the court concludes the ALJ's weighting of the opinion evidence is supported by substantial evidence, and the medical or psychological opinions rejected by the ALJ were rejected for specific, legitimate reasons supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

**a. Dr. Stoop**

Plaintiff does mention the opinion of her treating provider, Dr. Stoop, who opined that Plaintiff was "severely limited" and stated he considered her to be disabled. (Ct. Rec. 13 at 15, Tr. 1284-87.) The ALJ rejected Dr. Stoop's opinion for several reasons. (Tr. 53.) First, the ALJ pointed out that Dr. Stoop's office notes show little in the way of objective findings on examinations to support the opinion that plaintiff is severely limited. An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) Additionally, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). As the ALJ points out, Dr. Stoop's records show that plaintiff on some occasions had reduced range of motion, which is within her control, but otherwise generally had normal strength, stability and tone. (Tr. 1324, 1332, 1335.) However, on the DSHS Physical Evaluation form, Dr. Stoop noted limited flexion and extension of back secondary to surgery and pain and marked restricted mobility in every category. (Tr. 1286.) He also indicated a marked limitation, or very significant interference with the ability to perform basic work-related activities, due to degeneration of the lumbar spine, both knees, fatigue and malaise, COPD, and depression and anxiety. (Tr. 1286.) The ALJ reasonably rejected these limitations because they are not supported by Dr. Stoop's own assessments and treatment notes.

Second, the ALJ rejected Dr. Stoop's opinion because it is based on plaintiff's unreliable self-report. (Tr. 53.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. As discussed above, the ALJ made a properly supported credibility determination and found that plaintiff is not credible. Because Dr. Stoop's determination that plaintiff is disabled is based primarily on plaintiff's self-report, the ALJ properly rejected the opinion.

Third, the ALJ noted that Dr. Stoop's opinion is inconsistent with the opinions of several other providers. (Tr. 53.) When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is unsupported by clinical findings. *Matney v. Sullivan*, 981

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

F.2d 1016, 1019 (9th Cir.1992). After an examination in 1996, Dr. Bagby concluded plaintiff could do light work; after an examination in 2001 Dr. Bagby concluded plaintiff could do medium work The state reviewing physicians concurred. (Tr. 773-78, 1184-91.) Dr. Weilepp's testimony was accorded great weight by the ALJ, and he opined that plaintiff's physical restrictions put her at just below the medium work level, so she is capable of light work. (Tr. 1307-1313, 1506.) Other physicians noted inconsistencies in testing and symptoms, exaggerated pain response, normal gait, no radiculopathy, and normal neurological exams. (Tr. 768-69, 780-81, 1101, 1244.) These opinions constitute contrary substantial evidence justifying rejection of Dr. Stoop's opinion.

Plaintiff does not suggest or argue that the ALJ improperly rejected Dr. Stoop's opinion. The ALJ offered specific, legitimate reasons supported by substantial evidence for rejecting Dr. Stoop's opinion. Therefore, the ALJ did not err.

**b. Dr. Weilepp**

Plaintiff also suggests the ALJ did not properly consider Dr. Weilepp's opinion that plaintiff suffers from a pain disorder. (Ct. Rec. 13 at 15, Tr. 1502.) The ALJ gave great weight to Dr. Weilepp's opinion, and Dr. Weilepp did opine that plaintiff has a pain disorder. (Tr. 53, 1502.) Contrary to plaintiff's assertion, Dr. Weilepp did consider the effects of plaintiff's pain disorder. He stated, "Now because of the pain issues being primarily as a result of her necessity for some improvement managing it with narcotics at significant levels she would be precluded from extremes of cold and extremes of industrial vibration. But other than that I believe she can function at that level if the other issues [mental impairments and drug seeking] are under control."[5] (Tr. 1507.) As an orthopedist, Dr. Weilepp is not qualified to speak specifically to the non-exertional limitations he mentioned, and he declined to do so. (Tr. 1504.) As discussed in detail *supra*, plaintiff's

---

[5]Dr. Weilepp also testified:

> In terms of severity, it appears to me that the non-exertional neuropsychiatric and drug problems and medications both prescribed and non-prescribed are the major issues in terms of impairment of activity. . . . she has a pain disorder with narcotic management at this time. Again complicated by non-prescribed medications or non-prescribed use of chemicals that are not part of the record other than selected issues that the patient has described, decided to use on her own.

(Tr. 1502.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

psychological examinations are well-documented in the record and substantial evidence supports the ALJ's determination that no severe mental impairment exists absent substance use. Additionally, plaintiff's pain complaints in were properly discredited by the ALJ, as discussed in footnote 2 above, and were therefore properly excluded from the RFC determination.

**3.    Hypothetical**

Plaintiff argues generally that the hypothetical posed to the vocational expert was incomplete, without discussing a specific assignment of error. An ALJ is free to accept or reject restrictions in a hypothetical that are not supported by substantial evidence. *Osenbrook v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *Magallenes*, 881 F.2d at 756-57. The ALJ's findings regarding the medical opinion evidence and the drug and alcohol analysis are supported by substantial evidence in the record. The limitations identified by the ALJ were included in the RFC and the hypothetical to the vocational expert. As a result, the hypothetical to the vocational expert was legally sufficient and the ALJ did not err.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(Ct. Rec. 18)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED December 1, 2010

                              S/ JAMES P. HUTTON
                         UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16